Good afternoon. Before we get started, I just thought I would, Judge Rendell and I would like to recognize our colleague, Judge Barry. Today is her 32nd anniversary on the federal court. Let's give her a hand. Our first case today will be Bok v. Pressler&Pressler. Congratulations, Your Honor. They said I wouldn't make it this far. Told them. Thank you. Your Honor, could I reserve five minutes for rebuttal? You may. Thank you. May it please the Court, Emanuel B. Berger of Bok v. Pressler&Pressler. I do have a brief introductory statement I'd like to make, but before I give you my argument, in light of the letter from the Court last week, do you want me to start by addressing this Bok v. Pressler? Sure, I think that makes sense. It makes sense because I think you'd agree that, depending on what the Court does in Spokio, it could be very instrumental here. I think you're correct, Judge Barry. The issue in Spokio is whether a plaintiff who only asserts statutory damages for violation of federal statutes may invoke federal Article III jurisdiction because Spokio argues that in order for there to be a case for controversy, there must be actual damages. So we know what Spokio says. How would it impact here? As a consumer law professor, I hope Spokio loses, but if the Court decides that there is no Article III jurisdiction, it will fundamentally affect this case. The complaint in this case, which is where a plaintiff invokes the Court's jurisdiction, only asserts a claim for statutory damages. The Rule 26a disclosures, which are part of the Record of Appeal, the State, plaintiff asserts no claim for actual damages. Yeah, it's pretty clear there's no injury. And in light of that, if the Court decides in Spokio, I think there will be no jurisdiction, and the only outcome could be to reverse the commandment of jurisdiction. So that case has already been argued. Do you think it would make sense to put this on the CAV list until the Supremes decide? I've got two answers to that. The first answer is the current state of the law is that you have jurisdiction. The second answer is the United States Supreme Court says that the Court should not address the merits of the case before jurisdiction is determined. And the third point I would just add is that my sources tell me that it is a very close case after argument. And that would not surprise me, Your Honors. As I suspect you know, this issue was before the Court a few years ago in the Edwards case. And on the last day of the term, the same day that the Court announced the decision of the Affordable Care Act, it dismissed the Edwards briefs and was probably granted. It's clear the Court wants to address this issue and to put it to rest one way or another. Now, if the Court decides in Spokio, they're going to get a fair number of consumer statutes through the Lending Act, the Fair Declaration of Practices Act, the Electronic Funds Transaction Act. Maybe even declaratory judgment actions. Exactly. And again, since I teach this subject, I certainly hope they don't destroy those statutes. And frankly, as a defense lawyer who recalls why the Cross-Section Adjournment Act was passed, I don't want all my cases dumped back in the state court. But the fact remains, I don't know how it's going to go. I don't think anyone really does. All we know is that the Edwards brief was dismissed. And so that creates the problem. Okay. Well, maybe you can move to the merits then. Thank you. Under the theory that has been advanced by BAC and endorsed by the CFPB, even if Pressler and Pressler had tried the underlying state court case on the merits before judge or jury and won, it would still be subject to being sued in federal court for allegedly not having the meaning to be involved. How many of the cases that you handle, thousands and thousands of cases a year, are actually tried before a jury in state court? Very few. Very few. But many are tried in court. But we don't know. There's no record here as to how many, maybe what a handful are tried, and how many are just dismissed or defaulted. Correct. But it's fair to say it would be the bulk of them, wouldn't it? That's correct. But the fact remains that under this theory, every lawyer is subject to being second-guessed when representing a creditor. Put it in perspective, while the murder of Felton Doctrine may protect a creditor from being sued by a disgruntled state court loser, every disgruntled state court loser in a consumer debt collection case could run the federal court after losing and sue the creditor's lawyer. Well, but it is what it is. I mean, but given Heinz and Lesher and Kmart, write the opinion for me that says that this does not qualify under 1692 as deceptive. I'm glad to do that. First of all, with the exception of one case, Millard, the Meaningful Involvement Doctrine has always been a letter doctrine. Always been what? Excuse me? Applied to letters. Applied to letters. All of the cases with Millard involved collection of letters. But Kmart, which was decided after Judge McNulty ruled in this case, says that a complaint is a communication under the Fair Debt Collection Practices Act. Again, write a way, W-R-I-T-E, a way around Kmart, Heinz, and Lesher. I'm glad to do that, Your Honor. Let me start with Heinz. I was one of the leading security counsel in the case. The only issue before the Supreme Court in Heinz was whether a lawyer was a debt collector. The court did not have before the extent to which the act applied to litigation conduct. And once you reach the conclusion that a lawyer is a debt collector, it does not automatically follow that litigation is subject to the act. In fact, the text of the act is in the decision. But we've decided that. We decided that in Kmart, did we not? Well, yes and no. In the Kmart decision, you actually left room to decide differently, and I'm asking the court to embrace that room. All right, so tell me what that room is, Hal. Write it for me. First of all, the court concluded in Kmart that, as the Supreme Court has indicated, you may depart from that room when it would mandate an absurd result. So the facts of this case, like I said, if I may, Your Honor, let me start with the act itself. Under the FDCPA, there are some fundamental privacy protections. For example, a debt collector may not communicate with a third party without prior consent of the court. If every time a lawyer files a collection suit, that's a communication with the entire world to make a public record telling everybody in the world that this debtor owes this money. Right, and usually that complaint's been filed after the lawyer has made sure that there is a claim that should be brought and has looked at the underlying documents, etc., etc. I'd like to address that, but first respectfully, Your Honor, that begs the question. Section 1692C, subsection B, does not leave room for that. What it says is, unless Bok gave permission or the court gave permission before the suit was filed, a third-party communication is prohibited. And all of the cases seem to dodge this section. I'm not going to accuse courts of selective literacy. I'm going to accuse lawyers of selective advocacy because no one seems to hit this point head-on. When a lawyer turns someone's over to a marshal, which doesn't happen in New Jersey, but it does happen in Pennsylvania and Delaware, again, there's a third-party disclosure. And while my friend Mr. Flitter will probably scoff and say, no one will do that, my answer is, great lawyers like Mr. Flitter don't. But I'd like to defend that litigation, that the litigation process itself creates a third-party disclosure. Multiple portions of the Act are incompatible with an adversarial system in which lawyers must advocate for clients. It is the essence of a contemptual lawsuit that people disagree on the facts, on the law, and on the outcome. Yet the FACPA says that any time a debt collector misrepresents the character of a debt or the amount of a debt or the charges that can be imposed, the lawyer is subject to strict liability. If that applies to litigation, lawyers become strict liability insurers of the success of their client's outcomes. And that is why the Henningsen Court, in a case where the lawyer's pseudodebtor, who was not liable, it was her ex-husband's debt, said the fact that they filed an affidavit and filed a brief and were wrong doesn't subject them to the Act. There has to be a limit on the degree to which the Act applies. Maybe look at it this way. There's a Meaningful Attorney Involvement Rule that's been developed. Our Kmart case says complaints are communication, right? So why doesn't the Meaningful Attorney Involvement Rule then apply to complaints? Two reasons. First, the history of Meaningful Involvement was it's based upon a concept dating back to the 1977 FTC Staff Commentary, that a debt collector may not create a false sense of urgency. That was what was at issue. Coleman, a seminal case on Meaningful Involvement, where the lawyer is saying that a series of letters threatening a suit on a $9.42 magazine subscription debt where he's never seen the file, never seen the letters, and doesn't know the debtor exists, is followed by a vela in which the court observes that a letter from a lawyer is intended to get the debtor's knees knocking and implies that the price of coca has gone up. And you don't think that being served with a summons and a complaint has the same impact? I mean, are you arguing there's no urgency with a complaint? To the contrary, Your Honor. I'm arguing there's a true sense of urgency, not a false sense of urgency. When the letter went out from the lawyers in cases like Coleman and the vela, no risk existed. The letter was essentially pay or else, and there was no or else. Right, but the true sense of urgency with the complaint is this lawyer has researched this, as is his obligation under ethical rules, and this has brought him, you know, and I'm being subjected to a lawsuit. But, Your Honor, if Mr. Blackwell was subjected to a lawsuit, it is undisputed that the oppressor served and sued the right person on the right account for the right debtor in the right court. Well, then we need, aren't you saying that Congress should amend the law and make this, and have this as an exception? In fact, I'm wondering, there's 53 FR 50097-02, definition of communication under the Federal Register anyway, excludes legal suits. Maybe we need to, you know, maybe we need to change what Kmart says, or maybe there needs to be a law that says we exclude legal action. Well, that would certainly be good. In fact, Congressman Nunzio said after the fact that he didn't intend litigation to be covered, but the Supreme Court said statements after the fact. What is your best, specifically, what is your best argument why Kmart does not support your client's position? If I may have one moment, the court actually said in Kmart that the court in that case was not mandated to try and reach a different result. And the court almost certainly left room, here's the exact quote, absent a finding that the result will be so absurd as to warrant implying an exemption in FDCPA claims involving foreclosure actions, we are not empowered to disregard the plain language of the statute. Now first, I need to point out, meaningful attorney involvement isn't in the statute. Those words do not exist in the FDCPA. They were actually created by the courts in interpreting, as I said, this false sense of urgency and another section, which is 1692E3, this representation that communicates this prominent term. Well, but we don't need to, I mean, meaningful involvement is kind of the catchphrase. But even in Lesher, we said that the consumer would be led to believe that an attorney had reviewed the case and determined that legal action was appropriate. I mean, that really is our precedential standard for what we think meaningful involvement is, is it not? Well, certainly in Lesher it is, in a letter case, yes, Your Honor, but in this case, the record reflects. But Haymar treats the complaints and letters as fungible. Well, again, for the purpose of whether it's a communication, yes, but respectfully, Judge Berry, that still begs the question of meaningful attorney involvement. A lawsuit is a communication from a lawyer. Only a lawyer could file that suit. Whether or not any of us think four seconds is enough to review, whether or not the lawyer could have spent more time, the fact remains the record is unobtrusive. Ralph Bocos affidavit says, I reviewed the filing. I reviewed any and he says I reviewed every filing. Whether he was exercising independent professional judgment is evidenced by the fact that he rejected and claimed that debt. These are reverse identical claims. I don't know if you've looked at the state court complaint. It's present multiple times in the record. It is four lines of substance. It's a one-count state court complaint. Counsel, we're going to have to cut you off. You're a little over time here. We're going to get you on rebuttal, okay? Thank you. Thank you. Counsel, you want to start off with Spokio, I suppose? I do. May it please the court, Kerry Flipper, and the defense attorney for Daniel Bok. I would like to start off with Spokio, Your Honors. I don't see it exactly as Mr. Neuberger does. First off, this is not a class case. This is an individual case where one person was sued because he was sued without meaningful involvement. That is to say that the suit brought against him was entirely a byproduct of lay people and automation. But he settled the suit. He did settle the suit. And that, of course, doesn't establish whether he owed it, didn't owe it. That's exactly right, Your Honor. Well, I don't know. It's certainly some evidence of it. When the complaint was filed, there was a pro se answer filed. And the pro se answer said two things. Basically, challenge the assignment. I don't know who his plaintiff is. And the amount due. So all we know thereafter is that the matter was settled for about 35 cents, 35 percent or so of what was asked. But to return to the Spokio point, if I may, the way the – as I understand the petitioner's argument in Spokio, it is that Congress is not free to create a remedy without any concrete harm and allow standing to a litigant absent a concrete harm. But in reading the briefs, it does appear that even the petitioner in Spokio was adhering to the Wuhan rule, which is to say if you have a case where there is some harm, then Congress is free to pass legislation to either set the amnesty to the harm, ease the proof of the harm, and so on. Well, I mean, don't argue Spokio, because we just want to know is it possible that that's going to have an impact on our case. And the reason I raise that as kind of the preface, sir, is that here Mr. Bach was – this suit should never have been drawn against Mr. Bach. Another suit may be if there had been attorney involvement, if the file had been reviewed, if the attorney satisfied himself, this suit should not have been filed against Mr. Bach under these circumstances. He retained an attorney, he paid $1,000 to defend the case, he settled the case. So the point I'm making is – and to Judge Rendell's point, I think Your Honor said there was no harm here. I would agree that there was no harm that was sued for or pledged, but that's because we're operating under the penumbra of a fair debt. I think if we go back to the time of the Framers, which is what a lot of the Spokio argument is about, a lawsuit brought against someone by lay people, which this effectively was, is an abusive process, unlawful practice of law, but this is not a cause of action entirely unknown to the common law. So this is a case that could be brought regardless of what happens with Spokio. It is not one of those species of fair debt cases that exists solely because there is a statute. There are different disclosure requirements in the Act, like a 30 days to validate the debt. Absent fair debt, that doesn't exist. Here, a suit that should not have been brought against a consumer could be redressed at common law. Could you answer Judge Chigares' question? Is there a possibility, is the way he phrased it, that Spokio could be game, set, and match for this case? Your Honor, is there a possibility? I would have to say absolutely yes, because I have no idea. Right. We don't know. It's like preventing a football score or an election or something. Although I do find it hard to believe that in the stroke of a pen, the Supreme Court would wipe out all manner of cases that permit the remedy without a monetary loss. Yeah, if you listen to the oral argument, you're thinking that's… Just one other point to be made on that, and then I'll move on to Spokio in the limited time I have remaining. After the summary judgmental liability that we're here to address today, there was an agreement between the parties that the damages were set at $1,000. Well, that's a bit problematic in terms of what may happen under Spokio. I would argue that since the damages have been agreed upon, whether they were intended to be actual compensatory or otherwise, that's off the table. And the general rule in this circuit is that an area of challenging law does not initiate a settlement. So I think that's something that would need to be revisited post-Spokio, whether this Court holds a decision for Spokio or decides it and sends it back down when it's in front of judgment. But there was a settlement of damages, so I think it takes it out of the event. So let's get into the merits. Just approaching the FDCPA, I mean, it speaks of… I mean, from the very beginning, now we all know that the law has progressed. And, you know, maybe your friend would say it's progressed a little too far. It's been applied to something it shouldn't have been applied to. Is there really an actionable misrepresentation, fraud, deception here in the common sense of the word? I mean, you know, I know four seconds doesn't seem like a lot, but a lot of these other cases you can understand how the act or why the act would apply  But here, not so much. What do you say? Well, to the face of the complaint, where is the actionable misrepresentation? The misrepresentation occurs because under the act and under all the ethical rules, the signature of an attorney on a pleading certifies that he has read it or prepared it, that he's made due investigation into the facts, and that he's reached a considered professional judgment that it can go forward. Now, the fact that at the end of the case, the case may be successful does not have anything to do with it. Are you saying that with this kind of a complaint, that all these thousands of cases that are filed, every one of them must be investigated in some way, whether through discovery or anything else, to see if the misrepresentation, as here, I think Judge McNulty said, implicit false and misleading facts? The word implicit is very important at page 22 of his opinion. I absolutely think that that is the burden of the plaintiff's attorney. I don't think that certain classes of attorneys get a pass. I think that, imagine if an attorney walked across the street in a district court with 663 complaints to file in the District of New Jersey. But he can't file them until there's evidence that, of all the things you're asking for. Yes, but that attorney has a Rule 11 obligation to be personally involved and investigate the case and make a reasoned professional judgment that they're warranted under existing law, that the evidence is available. So aren't you back now into state law? Aren't you back into rules of discovery and ethical obligations of lawyers and things of that nature? No. Is a federal court the one who should be deciding whether or not, in a particular case, those kinds of? Yes, because it's been federalized in 1692E3. The Act requires, or I should say forbids, the false implication that a communication is fraud. Does it use the word implication in the Act? False or misleading? It's a false implication or implication that any individual is an attorney or that any communication is from an attorney. Well, but there's not that here. Nobody's suggesting he was an attorney, was not an attorney, or that the communication was not from him. It was not from an attorney. That's our point. Well, we're talking about the complaint. The misdemeanor had no involvement in the preparation of the final of this case. None. It was entirely. No, that's not true. He had four seconds or whatever it is. But you're talking about a complaint that's one substantive sentence. How long does it take? Are we skating on some thin ice? I mean, what is the appropriate amount of time? Are we supposed to set that? No, I don't know that this court could. First of all, I don't think this is the case to set it because four seconds is the functional equivalent of zero. And I should add, the evidence was that he looked at this screen and that and then entered three keys. But entering three keys takes a second or two. Now you're left with two seconds. Well, aren't you investigating now whether the paralegal support was sufficient and how much time is required there? And is this what we have to do, what has to be done in all of these complaints before you know whether a claim is even stated under the Act? Your Honor, in every complaint filed in every courthouse, the attorney has an affirmative obligation to personally undertake the investigation and to see to it that the certification that he or she signs that says that I warrant, this is a proper and existing law, and that there will be sufficient evidence to pursue the case, that has to be done by a personal investigation. But that's not what this case is about. This case is about the least sophisticated consumer and their impression when they get a lawsuit. We're assuming that consumers believe that every lawsuit is valid or has been researched. It could be that the least sophisticated consumer thinks that there are a lot of frivolous lawsuits around there and they're being sued but they'll have their day in court. And once you bring the court process in it, it takes away from the coercion, the urgency, because you know you'll have your day in court. But the idea is that the Act addresses this as ante. The Act doesn't rely on consumers, most of whom default, to come and defend the case. But wasn't the Act really intended to apply to these collection letters? Your Honor, the Act was only intended to apply to collection letters and collection lawsuits because the statute sets a layer above rule letter and the state rule, not something below. So, you know, as your friend points out, there's nothing facially false about the complaint. It's the right plaintiff or the right defendant, rather. We wouldn't be here, I suppose, if you agree with me or not, but if they spent 15 minutes on background, we wouldn't be here, right? Well, that may be, but that applies to every case in the court. How much is enough? But I want to, if I can, make a point on that. The issue is not simply the result. Here you have a case. It's a rigid contract case. There were two assignments. There was an assignment to the first debt buyer and the second debt buyer. They may have chosen to plead this in one paragraph. This is not ultra-simple. Come on, it's a book account. It's the simplest complaint in court. It is if it's from the creditor. But you now have two assignments. I've seen the assignments. They're not in this case, but they're like this. They have to be reviewed by the attorney. What do you say for the Felt Declaration? I mean, they have a pretty, they've got a pretty detailed process before this complaint gets pumped out. And in response to that, I would say that technology and the use of non-lawyer assistance are proper, but only when done under the auspice of the attorney. What's not disputed in this record is that no attorney had any involvement in the process of the preparation of the Bob complaint until Mr. Goldberg spent a couple of seconds looking at screen A and B and then two more seconds punching in endergo. Okay. Thank you, counsel. We'll hear from Ms. Bateman. Ma'am, please support. Kristen Bateman with the Consumer Financial Protection Bureau. It is well established in the context of death question letters that an attorney death note can't send out a letter under his name unless he's actually been meaningfully involved in the letter's case. It's no different when the death question attorney instead puts his name on and files a death question complaint in court. And that's because communication from an attorney, whether it be a letter or a lawsuit, conveys an important message, and that is that there is actually an attorney meaningfully involved here, that that person is acting as an attorney, and that that person is exercising the professional judgment of the license. Isn't there a quantitative difference between a threat letter where, you know, it's a threat and a complaint, which is the complaint is what it purports to be. You're involved in litigation now. Isn't there a real difference? The message that there's an attorney meaningfully involved here does, in the letter context, convey that threat that perhaps I would bring a suit against you, but it also conveys a different message that's also important, and that message is that there's actually an attorney meaningfully involved here exercising professional judgment that this is a valid claim and that this case warrants legal action. And whether we're talking about a letter or a lawsuit, that representation is false, and that representation is something that you need to know. Well, how do you define meaningful? Does meaningful have a firm definition, or is it a question of fact? I don't think the court needs to decide in this case here the specific steps that an attorney has to take to be meaningfully involved and to avoid misrepresenting his level of involvement under the FDCPA. Wherever that line is, this is clearly on the not-enough side of the line. The undisputed evidence here shows that no attorney in Pressler and Pressler spent any more than four seconds looking at this case, and that four-second review consisted purely of ministerial checks. Didn't we set a standard in Lesher when we said it communicates the thought that an attorney has reviewed the case and determined that legal action is appropriate? I mean, haven't we established a standard? I don't think it's a meaningful involvement standard, but it is a standard as to what the fact of the attorney's name, what it conveys. You're right. Yes, that's right, Your Honor. Lesher does establish the message that an attorney's book of honor conveys, and that message is that an attorney has actually reviewed his case, and has other courts have phrased it in different ways. But how do you find out that that was not? How do you assume, when the complaint doesn't self-specify, that that was false? That the representation of an attorney involved was false? Yes. Because the undisputed evidence here shows that the only thing that Mr. Golko did was conduct a ministerial check where he compared information on the complaint with the summary data that they received. Can I stop you for a second? We know the facts, but let's roll ahead. Let's assume we agree with what you're saying. It's a book account, okay? In every one of these cases now, we're going to get into discovery on the attorney? How much time did you spend on this particular thing? Isn't that going to make it very unwieldy to litigate these things, if every time a lawyer's got to be deft to testify about how long he or she actually spent on a complaint before it went out? And then we're going to litigate whether that's adequate or not adequate? And especially when there's no issue, the underlying issue has been resolved, or the debt maybe isn't even contested. Your Honor, as the Supreme Court pointed out in German, there are a host of ways in which the FDCPA protects against potentially frivolous litigation. There's the bonafide error defense. There's the key shifting if a plaintiff brings an FDCPA. Yeah, but there was discovery done here. You wouldn't have known he took four seconds on it unless there was discovery taken. Isn't that going to have to occur in every case, then? A plaintiff would have to have a basis for bringing the lawsuit in the first place. I imagine there was a basis here when they saw the volume of complaints that Mr. Goldstein filed. Well, imagining there's a basis here is not, you know, that's – is that enough? Well, once we got into the case, we – I mean, you settled the case. I mean, Bob settled it off the state court, so he obviously thought there was a basis there or a reason to settle. For the underlying state case? Yes. I see. What I would say, Your Honor, is that the attorney review here, both the process leading up to Mr. Goldstein and the four seconds, nothing in that process was geared at assessing the validity of the debt. And that was an important – very important scaling here. It may turn out that – That's why I said he settled it earlier. So it may have turned out that the debt was valid. I don't think that the settlement – So Judge J. Garris' question is really quite profound. I mean, what are we supposed to do in all these cases? All the – we in the editorial, we. If attorneys are, in fact, filing lawsuits in court, without any meaningful involvement by an attorney, it is appropriate that they are subject to lawsuits like this because they are engaging in a deceptive practice in violation of the FDCPA. As I was saying before, the failing here was that nothing in the process or in Mr. Goldstein's four seconds was geared at assessing the validity of this debt and the validity of the claim that they were going to assert in court. And that has meaningful consequences for consumers because a consumer who receives a complaint from an attorney will understand that there's an attorney meaningfully involved here. An attorney can review this case and reach a professional judgment about that. And that comes back to how the consumer reacts to the lawsuit. But there is a certain Kafka-esque quality, as I think Judge J. Garris has pointed out. How did Bach here know, or did he have a reasonable belief, that the lawyer had spent four seconds? So for the sake of making sure that lawyers have meaningful involvement, we have lawsuits brought against lawyers based on the suspicion that perhaps they didn't have meaningful involvement, but was there any underlying knowledge that they didn't, or are we doing this discovery to do kind of a gotcha on lawyers? I have two responses to that, Your Honor. The first is that objection could also be made in the letter context. Presumably people would have the same basis for questioning the level of attorney involvement. Well, but there is more. Well, yeah, I guess so. Although letters, now everybody's putting, doesn't mean putting a disclaimer on them, so that really doesn't happen. But you're kind of flying blind when you're suing these lawyers just hoping, gee, I hope he didn't have meaningful involvement, because then we've got him. But for all we know, he'll say he spent 15 minutes looking at, and then you throw it out. And you brought what is therefore a frivolous lawsuit. Well, Your Honor, and that brings me to my second point, which is that the rules of the court still apply here, and if the plaintiff, an FDCPA plaintiff, is bringing a suit without a reasonable factual basis for that, that would be a Rule 11 violation. And there are rules like that that are guarding against the abuse of law since the court trial is concerned about. Okay, thank you so much. Thank you, Your Honor. May it please the Court, the thing on which the consumer should be focusing attention and not the lawyer's signature is the summons. It is a command from a court saying you've been sued. If you do not answer the suit, a default judgment can and will be rendered against you. That is the focus of the consumer's attention. It is respectfully absurd to suggest that a consumer is relying on the advice inherently given in a lawyer's signature when a lawyer represents the opposing party. As lawyers, we're not even ethically permitted to give legal advice to an opposing party. What distinguishes this case apart from Kmart is simply this. Kmart involved a material misrepresentation of fact. The lawyers affirmatively represented that charges had been incurred when they had not. This case is about an alleged implicit misrepresentation arising in a lawyer's signature. In a case, by the way, where the plaintiff had a remedy. He did not seek Rule 148 sanctions. If Mr. Bach wants to seek Rule 148 sanctions, that's his right, is it, for any legal state court. If he wanted to file a grievance, he had that right. But instead, he wants to create a standard that's like pornography. He knows it when he sees it. And every collection lawyer is going to be subject to this threat that if you win the case, the debtor will haul you into federal court and sue you, saying you should have worked harder for your client. Ralph Loco exercised independent professional judgment. Whether or not four seconds was enough is his job to decide. He had the benefit of working for the Pressler firm since 1980 and knowing their procedures. He had familiarity with this particular creditor's files for eight years. He had knowledge of all of the things that occurred after that point. And in the record, you'll see in the summary judgment documents that Mr. Bach admitted that multiple departments of the Pressler firm had reviewed this file before it got to Loco. So Mr. Loco is making a decision based on all of this information, all of these processes. He still rejected ten of them, and he's clearly not rubber stamping them. And yet still there's one more reason why this court should reverse it. The lawyer's signature on that complaint is constitutionally protected. The First Amendment protects the right to petition courts to address the grievances, and the Bureau equates the meaningful involvement Before you get too deeply into this, I think your adversary says this argument has been forfeited. It hasn't been raised yet. How come it can be raised now? Well, two answers, and I'm not sure if it will satisfy your judge's regards, but one is I'm not sure there was governmental action until Judge McNulty issued an order fining my client Lico for exercising constitutionally protected conduct. Second, that is a rule of discretion, not a rule of jurisdiction. You are correct. The court has the discretion to hear this argument or not. I hope, given the serious nature of the rule of discretion to consider, that the precedent in this circuit is that you have discretion to hear it. And there's really just one point to be made on it. This court of appeals got it right on how Northampton is served. There's a case cited by the CFPB in its brief. It's called Barnes Foundation v. Township of Lower Merion. And in that case, the court found that the Northampton doctrine of client conduct was substantially more serious. It was racially discriminatory petitioning conduct directed against an African-American art museum. And the court looked at this sham exception, because the CFPB says that this meaningful involvement thing is like deceit or fraud on the court. What the court said in Barnes, interpreting the Supreme Court's decision in Professional Real Estate Investors v. Columbia Pictures, is it's a two-part test of the sham exception. Part one is, was the petitioning conduct objectively baseless? If not, the inquiry ends. Well, in this case, the petitioning conduct was the filing of a suit. It was not objectively baseless. Bach was the right debtor. He was sued for the right creditor. He was sued in the right court. He was sued on the right account. He paid $3,000 to settle that debt, while represented by a very experienced consumer attorney. Because the petitioning conduct, the complaint, was not objectively baseless, the jurisprudence in this circuit, and frankly, in the Supreme Court, is that's the end of the discussion. There is no sham, and therefore we're discussing constitutionally protected speech or petitioning conduct in this case. Kmart was different. Kmart did involve objectively false statements, objectively false petitioning conduct, but not so here. And to push aside the First Amendment's petitioning cause in favor of the fact that it disregards the supremacy of the Constitution, and if you'll forgive me, I'll quote Justice John Marshall, who said, that which is not supreme must yield to that which is supreme. I'm out of time, but if you have any other questions, I'd be glad to answer them. Okay. Thank you, counsel. Thank you very much. We'll take the case under advisement, and thank you, counsel, for a very well-briefed and argued case. Really, great job.